MAKAR, J.
Paruresis, colloquially known by phrases such as “shy bladder syndrome,” is a medical condition involving “the inability to urinate in public restrooms or in close proximity to other people, or the fear of being unable to do so.”[1] Akin to an anxiety disorder, it can have adverse impacts on people who are “unable to pass standard tests designed to detect illegal drugs, and are denied permission to take alternative tests that do not involve urination.”[2] Stephen Purrier, an inmate in the custody of the Department of Corrections, was initially disciplined for failure to provide a urine sample.[3] Months later, he obtained a prison medical record showing he has parure-sis and sought relief based on the newly-discovered evidence, but his request was denied as untimely by the Department and the circuit court. He now seeks relief in this Court.
In August 2013, Purrier — who was 62 at the time — was required to provide a sample for a random urinalysis test but couldn’t do so. He told prison officials that he had shy bladder syndrome, which he said had been documented in his prison medical records. He asked that his medical file be reviewed, but was told that the investigating officer found no such entry *785 nor any reference to a “pass” having been issued for the condition (“evidence regarding your claim [of shy bladder syndrome] ... does not exist”). As a consequence, he was disciplined for “refusing to submit to substance abuse testing” and sentenced to forty-five days in disciplinary confinement. Purrier timely grieved the initial disciplinary report, exhausting his administrative remedies on September 16, 2013, when the Department’s Secretary denied his administrative appeal.
Undeterred, Purrier a few months later was able to directly ask the prison medical department in November 2013 to review his medical records for mention of shy bladder syndrome, a search that proved successful. A so-called medical “problem list” clearly stated as of 2005 that he had “shy bladder syndrome,” a prognosis attested to by a senior psychologist.
Armed with a copy of his medical record, Purrier filed a new grievance on December 19, 2013, requesting that his initial discipline be reconsidered based on “newly-discovered evidence.” He noted that Florida Administrative Code Rule 33-601.310 allows for rehearing of a disciplinary matter if an error is discovered “at any time” thereby placing no time limits for a new grievance based on newly-discovered errors. The institution returned the grievance unprocessed, explaining it was untimely; the warden also denied the grievance. On February 19, 2014, Purrier’s appeal to the Department’s Secretary was returned without action, explaining that “[f]ive months is not a reasonable amount of time to present any new evidence.” The reference to five months is the time between the Department’s denial of Purrier’s first grievance on September 16, 2013, and the denial of his second grievance. Purrier then filed a petition for writ of mandamus in the circuit court. In its response, the Department again argued the petition was untimely; the circuit court agreed, dismissing the action for lack of jurisdiction.
On appeal, Purrier argues that the circuit court should not have dismissed his petition, which was directed to his second grievance. As an initial matter, both the Department and circuit court overlooked that Purrier had filed a second grievance, one that was based solely on the Department’s error in failing to find or provide Purrier’s medical record of paruresis. The second grievance, and its final disposition by the Department, go entirely unmentioned in the Department’s legal papers below and in the circuit court’s order. Purrier’s petition in the circuit court, which sought review of the Department’s denial of his second grievance and the one at issue in this appeal, was filed within 30 days of the Department’s final disposition; it was thereby timely. § 95.11(8), Fla. Stat. (2015) (“Any court action challenging prisoner disciplinary proceedings conducted by the Department of Corrections pursuant to s. 944.28(2) must be commenced within 30 days after final disposition of the prisoner disciplinary proceedings through the administrative grievance process under chapter 33, Florida Administrative Code.”); Whitfield v. Dep’t of Corr., 107 So.3d 1210, 1212 (Fla. 1st DCA 2013).
Both the Department and the circuit court also make no mention of Purrier’s reliance on the administrative rule related to errors discovered after an inmate is disciplined. As an interpretive matter, Purrier points out that that Rule 33-601.310 — entitled “Inmate Discipline— Rehearings” — contains no time limitations, which means an error — like the one here— can “discovered at any time” and be the basis for relief. The Rule provides, in pertinent part:
(1) I-f an error is discovered at any time after an inmate has been found guilty of *786 a disciplinary infraction, the warden, the facility administrator of a private facility, or the deputy director of institutions (classification) or designee is authorized to cause a rehearing to take place within 30 days of the discovery of the error or the receipt of a successful grievance or appeal.
Fla. Admin. Code Ann. r. 33-601.310(1). Based on a plain reading of the Rule, Purrier is correct that a rehearing can arise from a newly-discovered error regardless of when the error is discovered. No dispute exists that the Department made an error; its review of Purrier’s medical records resulted in the erroneous conclusion that “evidence [of Purrier’s shy bladder syndrome] ... does not exist.” The evidence did exist, and would have been the centerpiece of Purrier’s defense to the charge that he failed to provide a urine sample. In addition, the discovery of the error occurred “after [Purrier had] been found guilty of a disciplinary infraction” thereby making the Rule operative as to Purrier’s claim.
Although no party mentions subsection (2) of the Rule, we note that it says “No inmate is authorized to request a rehearing,” which does not apply here because Purrier has asserted a new grievance, one based on the Department’s error in failing to provide his medical record. If successful in this grievance, relief via rehearing under the Rule would be authorized. Id. 33-601.310(1) (rehearing to “take place within 30 days of the discovery of the error or the receipt of a successful grievance or appeal”) (emphasis added). Thus, even though the Rule does not permit an inmate to “request a rehearing” in a disciplinary case, no basis exists to summarily deny a new grievance based on an error that “is discovered at any time after an inmate has been found guilty of a disciplinary infraction.” To do so would lead to peculiar results, particularly in cases like this one. To require that Purrier have filed in circuit court within 30 days of resolution of his initial petition on September 16, 2013, when the Department did not provide him with his medical record until November 2013, is an impossibility; it is also contrary to the Department’s Rule that relief from errors — even its own — can occur at any time. Because Purrier filed his petition within 30 days of the Department’s final disposition of his second grievance, the circuit court had jurisdiction to review it.
BENTON and CLARK, JJ., concur.

. See EEOC Informal Advisory Letter: ADA Definition of Disability Under ADAA (August 12, 2011) (http://www.eeoc.gov/eeoc/fo ia/let-ters/201 l/ada_definition_disability.html)
("[A]n individual with paruresis has a disability under the first or second definition [of the ADA’s definition of disability in 42 U.S.C. § 12101(1)] if his or her condition substantially limits (or substantially limited in the past), one or more major life activities.”).

. Id.) see also Wilke v. Cole, 2014 WL 4410623, *2 (E.D.Wis.2014) ("Paruresis is a type of phobia, classified as a ‘Social Anxiety Disorder’ or ‘Social Phobia’ in the Diagnostic and Statistical Manual of Mental Disorders (DSM-V and DSM-IV). Typically the cause is viewed as psychological or mental.”).

. In the prison context, paruresis creates a number of issues related to drug testing programs. See, e.g., McClintic v. Penn. Dep’t. of Corr., 2013 WL 5988956, ⅜10 (E.D.Pa.2013) (discussing paruresis as applied to ADA, inadequate medical care, and related claims); Meeks v. Tenn. Dep’t of Corr., 2010 WL 3522977, ⅜5 (M.D.Tenn.2010) ("Plaintiff is legitimately concerned that he will be unable to obtain a recognized paruresis diagnosis from prison medical staff because diagnosing his paruresis and its implications would necessarily concern inmate drug testing and that he will thus be exposed to future disciplinary charges on account of his disability.”), report and recommendation adopted sub nom. Meeks v. Tenn. Dep’t of Cotr., 2010 WL 3522976 (M.D.Tenn.2010); Pate.v. Peel, 256 F.Supp.2d 1326, 1333 n. 12 (N.D.Fla.2003) (noting that inmate "supplied a copy of the DOC’s Procedure 602.010, Bashful Bladder Procedure, which outlines the steps to be taken to obtain a urine specimen from an inmate who claims that he suffers from BBS”).